IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BART M. KIRK and
EMILY D. KIRK,

                  Plaintiffs,

v.                                                        CIVIL ACTION NO. 3:23-0728

SUPERIOR MARINE WAYS, INC.,

                  Defendant and
                  Third-Party Plaintiff,

v.

KANAWHA RIVER TERMINALS, LLC,
SUNCOKE COAL & COKE LLC,
SUNCOKE ENERGY, INC.,
BRAD TILLER, AND
64 DECK CRANE BARGE, IN REM,

                  Third-Party Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Superior Marine Ways, Inc.'s Motion for Summary Judgment on Plaintiff Emily Kirk's Claims for Damages. ECF No. 20. Plaintiffs Bart M. and Emily Kirk oppose the motion. For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** Superior Marine's motion.

**I.
RELEVANT FACTUAL
ALLEGATIONS**

Plaintiffs allege in their Complaint that Plaintiff Bart Kirk worked as a supervisor and harbor worker for "Kanawha River Terminals, LLC a/k/a SunCoke Energy ('Kanawha River')

in Ceredo, Wayne County, West Virginia." *Compl.* ¶¶3, 4. According to Plaintiffs, Kanawha River is "a stevedoring company employing harbor workers to work on the coal dock[.]" *Id*. ¶4. On April 12, 2023, Mr. Kirk states he was at work when Defendant Superior Marine Ways, Inc. ("Superior Marine") was unloading a barge and dropping large amounts of coal into the river and onto the deck of a barge owned by Kanawha River. *Id*. ¶¶6-8. As a result, coal collected on top of a manhole cover on the Kanawha River barge making it so Mr. Kirk was unable to see it. *Id*. ¶¶9, 10. Mr. Kirk asserts that, when he walked out of his office to stop the dumping, he stepped on the manhole cover flipping it into his groin area which caused severe and permanent injuries. *Id*. ¶¶11, 12. Consequently, Plaintiffs brought this action against Superior Marine pursuant to 33 U.S.C. § 933(i)[1] of the Longshore and Harbor Workers' Compensation Act (LHWCA) to recover for Mr. Kirk's personal injuries and damages and to recover for Mrs. Kirk's deprivation "of her husband's services, comfort, society, household services and attention[.]" *Id*. ¶6 (Count One). Superior Marine moves for summary judgment on Mrs. Kirk's claim, arguing that non-pecuniary damages for loss of society are unavailable under general maritime law. Plaintiffs disagree. Superior Marine also argues that it is entitled to summary judgment on Mrs. Kirk's claim for "the reasonable value and expenses of hospitalization and medical care and treatment necessarily or reasonably obtained by her husband . . . in the past or to be so obtained in the future." *Id.* Plaintiffs make no response to this argument.

---

[1]Section 933(i) provides, in part:

> The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, . . . by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer.

33 U.S.C. § 933(i), in part.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

### A.
### Damages for Loss of Society

The primary question before this Court is a discrete legal issue, that is, whether non-pecuniary damages for loss of society are available under the facts of this case. To answer this question, the Court first turns to the United States Supreme Court's decision in *Sea-Land Services,*

*Inc. v. Gaudet*, 414 U.S. 573 (1974). In *Gaudet*, the Supreme Court considered whether wrongful death damages were available under a theory of unseaworthiness in territorial waters to the widow of a longshoreman who allegedly died "from injuries suffered by him while aboard a vessel in navigable waters—after the decedent recovered damages in his lifetime for his injuries." 414 U.S. at 574. Following a historical analysis of the treatment of wrongful death under maritime law, the Supreme Court recognized that early wrongful death statutes and the Death on the High Seas Act (DOHSA), 46 U.S.C. § 30301 *et seq.*, precluded recovery for loss of society, but it found the more recent trend by "[a] clear majority of States" allows such recovery. *Id*. at 586-87. Having considered the arguments for and against allowing recovery for loss of society under general maritime law, the Supreme Court held a decedent's dependents may recover for these damages against the vessel's owner. *Id*. at 584.[2]

In 1980, the Supreme Court revisited its decision in *Gaudet* in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274 (1980), to decide whether the wife of a harbor worker who suffered a nonfatal injury "aboard a vessel in state territorial waters" could maintain an action for loss of society "on grounds of negligence and unseaworthiness" in a suit against a non-employer vessel owner. 446 U.S. at 275-76 n.2.[3] In *Alvez*, the Supreme Court found there is "[n]othing intrinsic to the *Gaudet* rule . . . [that] should cabin its application to wrongful death," and it rejected an argument that the principle in *Gaudet* "must be limited by the fact that no right to recover for

---

[2]The Supreme Court explained that "society" includes "love, affection, care, attention, companionship, comfort, and protection," but it does not include "mental anguish or grief, which is not compensable under the maritime wrongful-death remedy." *Id*. at 585 n. 17.

[3]Footnote 2 provides, in part, that American Export Lines, Inc. impleaded Mr. Alvez's employer for indemnification.

loss of society due to maritime injury has been recognized by Congress under § 2 of the Death on the High Seas Act . . . or the Jones Act[.]" *Id.* at 281 (footnote and citations omitted).[4] Instead, the Supreme Court found that neither statute forecloses "a claim for loss of society by judicially crafted maritime law." *Id.* at 282. Additionally, as with wrongful deaths, the Supreme Court recognized that "a clear majority of States permit a wife to recover damages for loss of consortium from personal injury to her husband," and "it is a settled canon of maritime jurisprudence that it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." *Id.* at 282, 284 (citations, internal quotation marks, and footnote omitted). Therefore, the Supreme Court held the wife of a nonfatally injured harbor worker who was "aboard a vessel in state territorial waters" may maintain a loss of society claim under general maritime law. *Id.* at 276.

Ten years after the decision in *Alvez*, the Supreme Court in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), had to resolve whether a loss of society was recoverable for the wrongful death of a true seaman covered by the Jones Act, rather than a longshoreman under general maritime law. In discussing *Gaudet*, the Supreme Court emphasized its holding in *Gaudet* "applies only in territorial waters, and it applies only to longshoremen." 498 U.S. at 31. Additionally, the Supreme Court recognized that *Gaudet* was "inapplicable on its facts" because in 1972, after the suit in *Gaudet* was filed, Congress amended the LHWCA "to bar any recovery from shipowners for the death or injury of a longshoreman or harbor worker resulting from breach

---

[4]DOHSA covers all deaths "caused by wrongful act, neglect or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302. The Jones Act applies to "[a] seaman injured [or killed] in the course of his employment." *Id.* § 30104.

of the duty of seaworthiness." *Id.* at 28, 30 n.1 (citing 33 U.S.C. § 905(b); *Alvez*, 446 U.S. at 282, n. 9).[5] Nevertheless, the Supreme Court distinguished *Miles* from *Gaudet* because *Miles* involved a seaman under the Jones Act, not a longshoreman under the LHWCA. As the Jones Act incorporates the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, and FELA limits recovery to pecuniary losses, the Supreme Court held that the mother of a seaman may not bring a claim for a loss of society under the Jones Act. *Id.* at 32. The Supreme Court found this decision with respect to the Jones Act created uniformity with DOHSA as it also expressly limits damages in wrongful death actions to "'*pecuniary* loss sustained by the persons whose benefit the suit is brought.'" *Id.* at 31, 33 (quoting 46 U.S.C. app. § 762;[6] italics added in *Miles*).

More recently, in *The Dutra Group v. Batterton*, 588 U.S. 358 (2019), the Supreme Court addressed whether a seaman who brings an action for unseaworthiness under general maritime law against the owner and operator of a vessel following an injury may pursue a claim for punitive damages. To resolve the issue, the Supreme Court examined three different factors. First, the Court considered "whether punitive damages have traditionally been awarded for claims of unseaworthiness[.]" 588 U.S. at 369. Second, the Supreme Court examined "whether conformity with parallel statutory schemes would require such damages[.]" *Id.* Third, the Supreme Court considered whether it was "compelled on policy grounds to allow punitive damages for unseaworthiness claims." *Id*.

---

[5]Like Mr. Gaudet, Mr. Alvez's injury occurred prior to the 1972 amendments to the LHWCA barring a claim for personal injury or death due to a breach of unseaworthiness. *Id*. at 276 n.2.

[6]This section is recodified at 46 U.S.C. § 30303.

Under these criteria, the Supreme Court found that punitive damages have not been available historically for unseaworthiness claims, making it distinguishable from exemplary damages that are permitted in maintenance and cure actions. 588 U.S. at 370-72; *see Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 424 (2009) (finding "punitive damages have long been an accepted remedy under general maritime law" and punitive "damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law" (footnote omitted)). In so finding, the Supreme Court emphasized "the importance of viewing each claim in its proper historical context. Remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures." *Id.* at 369 (internal quotation marks, brackets, and citation omitted). Given this lack of historical evidence in unseaworthiness cases, the Supreme Court stated it could not sanction punitive damages "unless it is required to maintain uniformity with Congress's clearly expressed policies." *Id*. at 372.

Turning to the statutory scheme set forth in the Jones Act, the Supreme Court found a uniform consensus amongst the Federal Courts of Appeals "that punitive damages are not available under the Jones Act." *Id.* at 373 (citations omitted). Although the injured seaman argued these cases were wrongly decided or inapposite to his case, the Supreme Court rejected his argument stating his position "would be contrary to *Miles'*s command that federal courts should seek to promote a 'uniform rule applicable to all actions' for the same injury, whether under the Jones Act or the general maritime law.'" *Id*. 374 (quoting *Miles*, 498 U.S. at 33).

Lastly, the Supreme Court considered whether there are policy grounds or regulatory measures that warrant imposition of punitive damages. As a claim on unseaworthiness "serves as a duplicate and substitute for a Jones Act claim," it is distinguishable from a claim of maintenance and cure. While in *Atlantic Sounding* the Supreme Court found punitive damages are available for a maintenance and cure action as a "vessel owner and master have just about every economic incentive to dump an injured seaman in a port and abandon him to his fate" rather than pay for his medical care and wages, an owner or master's interest in maintaining a seaworthy vessel is more closely aligned with the crew. *Id.* 374-75 (internal quotation marks and citations omitted). Additionally, the Supreme Court recognized that allowing punitive damages in an unseaworthiness action would create inconsistencies with its decision in *Miles* and between the owner and master of a vessel. Id. at 376. Lastly, the Supreme Court stated that permitting punitive damages in the United States would create a competitive disadvantage with foreign-owned vessels. *Id*. Accordingly, as the Supreme Court found no justification for allowing punitive damages in an unseaworthiness case and disallowing such damages promotes "uniformity in maritime law and deference to the policies expressed in the statutes governing maritime law," the Supreme Court held that punitive damages are not recoverable on a claim of unseaworthiness. *Id*. at 377.

In this case, Superior Marine argues the Court should apply *Batterton* and find Mrs. Kirk cannot pursue a claim for loss of society. In support, Superior Marine cites *Mullinex v. John Crane Inc.*, Civ. Act. No. 4:18-00033, 2021 WL 8129699 (E.D. Va. Oct. 5, 2021),[7] a Report and Recommendation by a Magistrate Judge in the Eastern District of Virginia. In *Mullinex*, the

---

[7]Report and Recommendation adopted by *Mulllinex v. John Crane Inc.*, Civ. Act. No. 4:18-00033, 2022 WL 1607907 (E.D. Va. May 20, 2022).

Magistrate Judge applied the three-part test in *Batterton* to a loss of society and punitive damage claim brought by the wife of seaman in a general maritime negligence action for asbestos exposure aboard Navy ships. 2021 WL 8129699, at **1, 3. With respect to the loss of society claim, the court found a lack of historical evidence allowing such a claim under general maritime law. *Id*. at *3. In making this determination, the court relied, in part, upon a statement in *Alvez* in which the Supreme Court stated "that, as of 1963, 'there was no clear decisional authority sustaining a general maritime law right of recovery for loss of society.'" *Id*. (quoting *Alvez*, 446 U.S. at 280; footnote omitted). The court then found that *Alvez* itself did not create a historical record allowing a loss of society claim because the Supreme Court in *Miles* recognized *Gaudet*, which *Alvez* relied upon, is limited because of the 1972 amendment barred recovery by a longshoreman or harbor worker based on a breach of unseaworthiness. The *Mullinex* court further determined the Jones Act not allowing damages for loss of society is the appropriate comparator under the second part of the test, and it found a lack of policies compelling such damages under the third part of the test. *Id*. at **3-4.

    Here, however, the Court finds *Mullinex* is distinguishable from this case as Mr. Kirk claims to be a longshoreman and the injured worker in *Mullinex* was a seaman. Although the Supreme Court clearly was aware of the 1972 amendments when it decided *Alvez*, it held that "*Gaudet* provides the conclusive decisional recognition of a right to recover for loss of society[.]" 446 U.S. at 280-81. Moreover, the Supreme Court reasoned that, as "general federal maritime law is a source of relief for a longshoreman's [death or] personal injury," an action for loss of society is permitted and not constrained by either the Jones Act or DOHSA. *Id*. at 281-82. Although the

Supreme Court in *Miles* stated that *Gaudet* only applies to longshoreman in territorial waters, this case fits squarely within those parameters.

Superior Marine argues that this Court should read *Batterton* broadly and apply it to maritime negligence actions brought by longshoreman to create uniformity and continuity in maritime cases. However, like *Mullinex*, *Batterton* is distinguishable as it involved a seaman who sought punitive damages for unseaworthiness. For this Court to hold *Batterton* precludes a claim for loss of society by the spouse of a longshoreman is far too expansive of a sweep for this Court to make. The Supreme Court clearly cautions against withholding a remedy of "judicially crafted general maritime law" when not required "by established and inflexible rules,"[8] and the Court declines to do so in this case—particularly as the Supreme Court has expressly sanctioned loss of society claims by spouses of longshoremen. Even if the Court were to apply the three-part test in *Batterton* the result would be no different as there is a historical basis for such recovery as the Supreme Court explicitly recognized *Gaudet* established "a right to recover for loss of society." *Alvez*, 446 U.S. at 280-81. Therefore, for the foregoing reasons, the Court **DENIES** Superior Marine's motion as to Mrs. Kirk's claim for loss of society.[9]

---

[8] *Alvez*, 446 U.S. at 282 (internal quotation marks and citations omitted).

[9] In its Reply, Superior Marine argues the Court should treat this action the same as any other general maritime negligence claim. The Court rejects this argument as the rights and remedies available to longshoreman have evolved on a different path than those covered by the Jones Act and DOHSA, and this Court must consider the claims within that context.

### B.
### Mrs. Kirk's Claim for Expenses
### for Hospitalization, Medical Care, and Treatment

Superior Marine also moves for summary judgment on Mrs. Kirk's claim for past and future pecuniary losses for her husband's hospitalization, medical care, and treatment. Superior Marine attached as an exhibit to its motion Mrs. Kirk's deposition in which she states she has been reimbursed for her out-of-pocket expenses. *Emily Kirk Dep.*, at 24 (Mar. 27, 2024), ECF No. 21-1. Plaintiffs have not responded to this argument. Thus, in light of Mrs. Kirk's statement that she has no out-of-pocket expenses, the Court **GRANTS** Superior Marine's motion for pecuniary losses experienced by Mrs. Kirk.

### IV.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Superior Marine's Motion for Summary Judgment as to the loss of society claim made by Mrs. Kirk, but it **GRANTS** the motion as to her claim for loss of pecuniary damages.

The Court **DIRECTS** the Clerk to send copies of this Order to all counsel of record, and any unrepresented parties.

ENTER:   February 25, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE